## Freedman v. Pennsylvania Liquor Control Board

354

*Louis Sager*, for appellants.

*Alexander Knight*, for appellee.

FORREST, J., and GERBER, J., June 30, 1959.—This is an appeal from the decision of the Pennsylvania Liquor Control Board refusing the application of Albert Freedman and Samuel Portney for a Retail Dispenser Eating Place License for premises Welsh Road and Limekiln Pike, Maple Glen, Horsham Township, Montgomery County.

The reasons advanced by the board in refusing the application are:

1. "Under the terms of the lease held by the applicants, they are not permitted to conduct an eating place, the use of the premises being restricted to the operation of a general store and gasoline station;"

2. "The owner of the property is opposed to the licensing of the premises for retail sale of alcoholic beverages."

At the hearing held before this court, counsel for the Pennsylvania Liquor Control Board informed the court that there was no question as to the applicants meeting all requirements and there was no question of the premises meeting the minimum requirements and there was no question of the character, reputation and financial responsibility of the applicants, that the reasons for the refusal of the application by the board were as heretofore set forth. Counsel for the board went on to say that this case was treated by the board pretty much in the nature of a deed restriction case, in that the board does not attempt to pass upon the

legal rights as between the landlord and the tenant, and therefore, it was a question for the court to decide what those rights might be, and if the court feels that the applicant cannot operate with a license under the terms of the lease, then the board would not grant the license and that if on the other hand the court was of the opinion that the applicant could operate the establishment with the applied for license under the terms of the lease, then the board would have no objection. Thus the rule laid down by the court that a decision of the board should not be set aside except for a flagrant abuse of discretion does not apply to the type of case now before us: Stouffer Corp. Appeal, 71 Montg. 124 (1954).

At the hearing held before the court it developed that on July 25, 1956, the applicants entered into an agreement with their present landlord which provided in part that the applicants were to purchase from him all of his right, title and interest, including good-will and stock, of a certain grocery store, gasoline sales and auto accessories business and that the applicants shall have the right and privilege to sell upon the premises in addition to the ordinary items of a grocery store, gasoline sales and associated auto accessories business, the sale of coffee, sandwiches and sundries. Said agreement further provided that the applicants as buyers had the responsibility of obtaining the necessary permits for the sale of beverages and food upon the premises. A lease was also entered into between the applicants as lessees and the present owner as the lessor and the then seller of the business which provided in part that the lessee shall not occupy the demised premises other than as a general store and gas station. Charles A. Brown, the seller of the business and the lessee under the aforementioned lease, is the present owner and he objects to the granting of the Retail Dispenser Eating Place License to the appli-

cants and he contends that the purpose of the lease being set forth as a general store and gas station, that same constitutes an express prohibition against the sale of intoxicating beverages.

Thus we are really confronted with the question of what nature of business is embraced in the term "general store." In the case of Gunther v. Atlantic Refining Co., 277 Pa. 289 (1923), the court held that the word "store" has been broadly defined as a place where merchandise of any kind is kept for sale. Webster's Universal Unabridged Dictionary defines the term "general store" as a store in which all kinds of merchandise is kept. The lease before the court restricts the use of the premises to that of a general store and gas station. The lease does not spell out any express or specific prohibited uses, but the court could very well take the aforementioned term of the lease as some restriction upon the use of the premises. Therefore the words "general store" for the present purposes could be deemed ambiguous.

"It is well settled that where the language of a contract, or any part of it, is ambiguous, either party may produce oral evidence to explain the meaning of the contract or to resolve the ambiguity": Fischer v. Anderson, 173 Pa. Superior Ct. 175, 178 (1953).

For authority that the same rule applies to agreements of lease of real estate, see O'Neil v. Keegan, 376 Pa. 606 (1954).

The applicants in this case produced oral testimony through Albert Freedman to the effect that Charles A. Brown, the former operator of the business, the owner of the property and the lessor of the property, had prior to the sale of the business to the present appellants used the premises for sundry purposes including a delicatessen store. Mr. Freedman further testified that Mr. Brown had informed the present applicants that neither Mr. Brown nor his wife had any objec-

tion to Mr. Freedman and Mr. Portnoy obtaining a beer license for the premises. Mr. Freedman further testified that Mr. Portnoy and himself would not have purchased the business and would not have leased the premises from Mr. Brown if Mr. Brown or his wife had objected to their right to apply for and obtain a so-called beer license, and he further testified that Mr. Brown and appellants both knew and intended the term "general store" to mean a store in which anything could be sold, including beer in conjunction with the serving of food. All of this testimony remains uncontradicted. It should also be noted that the agreement providing for the sale of the business from Mr. Brown to appellants, which was entered into contemporaneously with the lease in question, provides among other things:

"It being understood and agreed that it is the buyers' responsibility to obtain necessary permits for the sale of beverages and food on the premises."

The term "beverage" could mean any kind of liquid sold for human consumption, but in these days, generally speaking, when we speak of a beverage for which a permit is necessary, we think in terms of alcoholic beverages.

In the light of the foregoing oral testimony explaining the words "general store" and in the light of the fact that said testimony remained uncontradicted and keeping in mind that the lease does not expressly prohibit the sale of alcoholic beverages, this court is of the opinion that the lease agreed upon between the parties does not prohibit the sale of food and does not prohibit the sale of malt beverages under a Retail Dispenser Eating Place License. Accordingly we are of the opinion that the decision of the board in this instance should be reversed.

And now, to wit, June 30, 1959, the decision of the Pennsylvania Liquor Control Board in refusing appel-

lants' application for a Retail Dispenser Eating Place License for the premises Welsh Road and Limekiln Pike, Routes 63 and 52 Maple Glen, Horsham Township, Montgomery County, is hereby reversed and set aside, the appeal is sustained and the Liquor Control Board is directed to issue a Retail Dispenser Eating Place License to the applicants for the aforementioned premises.